**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION** | **MDL NO. 3076** |

**MEMORANDUM OF DEFENDANTS THOMAS BRADY, GISELE BÜNDCHEN, LAWRENCE GENE DAVID, KEVIN O'LEARY, DAVID ORTIZ, AND WILLIAM TREVOR LAWRENCE IN OPPOSITION TO PETITIONERS' MOTION FOR TRANSFER OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................................ 9

III.   THESE ACTIONS DO NOT MEET THE STANDARDS FOR TRANSFER
       AND CONSOLIDATION ...................................................................................... 9

       A.     The Actions Present Unique Questions of Fact and Law ..................... 10

       B.     Transfer Would Not Serve the Convenience of the Parties ................. 15

       C.     Transfer Would Not Promote the Just and Efficient Conduct of the
              Actions ................................................................................................ 17

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Abbott Labs.*,
  763 F. Supp. 2d 1376 (J.P.M.L. 2011) ............................................................... 9, 11

*In re Air Crash Near Canandaigua, N.Y.*,
  427 F. Supp. 2d 1365 (J.P.M.L. 2006) ............................................................... 19, 20

*In re Allen Compound Bow Patent Litig.*,
  446 F. Supp. 248 (J.P.M.L. 1978) ..................................................................... 10

*In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*,
  709 F. Supp. 2d 1375 (J.P.M.L. 2010) ............................................................... 15

*In re Asbestos & Asbestos Insulation Material Prod. Liab. Litig.*,
  431 F. Supp. 906 (J.P.M.L. 1977) ..................................................................... 11

*In re Belviq (Lorcaserin HCl) Prods. Liab. Litig.*,
  555 F. Supp. 3d 1369 (J.P.M.L. 2021) ............................................................... 10, 15, 20

*In re Best Buy Co., Inc., Cal. Song–Beverly Credit Card Act Litig.*,
  804 F. Supp. 2d 1376 (J.P.M.L. 2011) ............................................................... 9, 18

*Bhatia v. Silvergate Bank*,
  No. 3:23-cv-00667 (N.D. Cal.) ..................................................................... *passim*

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ....................................................................... 18

*In re CNL Hotels & Resorts, Inc.*,
  2005 WL 2291729 (M.D. Fla. Sept. 20, 2005) ..................................................... 14

*In re Fam. Dollar Stores, Inc., Access for Individuals with Disabilities Litig.*,
  466 F. Supp. 3d 1383 (J.P.M.L. 2020) ............................................................... 16

*Feldman v. BRP U.S., Inc.*,
  2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) ..................................................... 18

*In re FTX Trading Ltd.*,
  No. 22-11068 (Bankr. D. Del.) ..................................................................... 1, 17

*Garrison v. Bankman-Fried*,
  No 22-cv-23753-KMM (S.D. Fla.) ..................................................................... *passim*

*GEC US 1 LLC v. Frontier Renewables, LLC,*
    2017 WL 605070 (N.D. Cal. Feb. 15, 2017) .........................................................................14

*In re Gen. Motors LLC Ignition Switch Litig.,*
    2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................................................14

*In re Genetic Techs. Ltd. (%2C179) Pat. Litig.,*
    883 F. Supp. 2d 1337 (J.P.M.L. 2012).................................................................................13

*In re Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.,*
    899 F. Supp. 2d 1378 (J.P.M.L. 2012).......................................................................9, 18, 20

*Hawkins v. Bankman-Fried,*
    No. 3:22-cv-07620 (N.D. Cal.) ..................................................................................*passim*

*In re IDT Corp. Calling Card Terms Litig.,*
    278 F. Supp. 2d 1381 (J.P.M.L. 2003).................................................................................19

*In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.,*
    486 F. Supp. 2d 1371 (J.P.M.L. 2007).................................................................................19

*In re Jan. 2021 Short Squeeze Trading Litig.,*
    2021 WL 1258399 (J.P.M.L. Apr. 2, 2021).........................................................................10

*Jessup v. Bankman-Fried,*
    No. 3:22-cv-07666 (N.D. Cal.) ..................................................................................*passim*

*Kavuri v. Bankman-Fried,*
    No. 22-cv-23817-DPG (S.D. Fla.) ..........................................................................................4

*Keane v. Silvergate Bank,*
    No. 3:23-cv-00670 (N.D. Cal.) ..................................................................................*passim*

*Lam v. Bankman-Fried,*
    No. 3:22-cv-07336 (N.D. Cal.) ..................................................................................*passim*

*In re Lycoming Crankshaft Prod. Liab. Litig.,*
    473 F. Supp. 2d 1380 (J.P.M.L. 2007).................................................................................18

*Magleby v. Silvergate Bank,*
    No. 3:23-cv-00669 (N.D. Cal.) ..................................................................................*passim*

*In re Manown,*
    213 B.R. 411 (N.D. Ga. 1997)..............................................................................................17

*Norris v. Brady,*
    No. 23-cv-20439-KMM (S.D. Fla.) ...........................................................................*passim*

*O'Keefe v. Sequoia Cap. Ops., LLC*,
    No. 1:23-cv-20700 (S.D. Fla.) ....................................................................... *passim*

*In re Optimal Strategic U.S. Equity Fund Securities Litig.*,
    648 F. Supp. 2d 1388 (J.P.M.L. 2009) ...........................................................10

*Papadakis v. Bankman-Fried*,
    No. 3:23-cv-00024 (N.D. Cal.) ..................................................................... *passim*

*In re Phila. Newspapers, LLC*,
    423 B.R. 98 (E.D. Pa. 2010) ..........................................................................17

*Pierce v. Bankman-Fried*,
    No. 2:22-cv-07444 (N.D. Cal.) ..................................................................... *passim*

*Pilgrim v. Univ. Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ..........................................................................18

*In re Plumbing Fixture Cases*,
    298 F. Supp. 484 (J.P.M.L. 1968) ..................................................................19

*Podalsky v. Bankman-Fried*,
    No. 22-cv-23983 (S.D. Fla.) .............................................................................2

*In re Shoulder Pain Pump-Chondrolysis Prod. Liab. Litig.*,
    571 F. Supp. 2d 1367 (J.P.M.L. 2008) ...........................................................11

*Statistica Capital Ltd. v. Signature Bank*,
    No. 1:23-cv-00993 (S.D.N.Y.) ...................................................................... *passim*

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018)..................14

*United States v. Bankman-Fried*,
    No. 22-cr-673 (S.D.N.Y.) ...............................................................................17

*UTC Indus., Inc. v. Presidential Fin. Corp.*,
    976 So. 2d 92 (Fla. 3d DCA 2008) .................................................................13

*In re Watson Fentanyl*,
    883 F. Supp. 2d 1350 (J.P.M.L. 2012)............................................................13

## STATUTES

11 U.S.C. § 362(a) ...............................................................................................17

17 U.S.C. §§ 2721 *et seq.* ....................................................................................19

28 U.S.C.
§ 1404.................................................................................................................20
§ 1407...........................................................................................................*passim*

Fla. Stat. § 501.211(2)...........................................................................................13

Fla. Stat. §§ 501.201 *et seq.* ...................................................................................4

Fla. Stat. § 517.07 ..................................................................................................4

## RULES

Fed. R. Civ. P. 12.............................................................................................1, 13

## OTHER AUTHORITIES

*Manual for Complex Litigation* § 20.131, at 220 (4th ed. 2004) ..................................10

Defendants Thomas Brady, Gisele Bündchen, Lawrence Gene David, Kevin O'Leary, David Ortiz, and William Trevor Lawrence (collectively, "Responding Defendants")[1] submit the following memorandum in opposition to Petitioners' Motion for Transfer of Related Actions to the Southern District of Florida Pursuant to 28 U.S.C. § 1407 ("Mot."), ECF No. 1.

## I.      INTRODUCTION

Petitioners seek the extraordinary measure of transfer and consolidation of twelve distinct cases pending in three United States district courts—the Northern District of California, the Southern District of Florida, and the Southern District of New York.  Collectively, these cases include eleven uncertified putative class actions, thirty unique plaintiffs, thirty-nine unique defendants, and a multiplicity of unique legal theories.  The only commonality among all twelve cases is that each is alleged to be related in some way to the collapse of the now-defunct cryptocurrency exchange FTX—a bankrupt entity not named as a party in any of the twelve cases.[2] But the mere fact that each case relates in some way to FTX does not necessitate consolidation.  In fact, transfer and consolidation into a multi-district litigation ("MDL") would only *hinder* the significant efforts the parties in these twelve cases have already taken to promote judicial economy, including consolidation with similarly situated actions where appropriate.

The twelve cases can be grouped into three "categories" of cases:  (1) the "Celebrity Cases"—in which various plaintiffs allege that certain celebrity defendants (athletes, actors, and

---

[1] Each Responding Defendant is a defendant in *Garrison v. Bankman-Fried*, No 22-cv-23753-KMM (S.D. Fla.) (filed Nov. 15, 2022).  Responding Defendants Brady, Ortiz, and O'Leary are also defendants in *Norris v. Brady*, No. 23-cv-20439-KMM (S.D. Fla.) (filed in state court Dec. 2, 2022; removed to federal court Feb. 3, 2023).  The Responding Defendants do not intend to waive any jurisdictional or other defenses they may have under Rule 12, and expressly reserve those defenses.  The *Garrison* defendants' date to respond to the Amended Complaint is April 14, 2023.  *Garrison*, ECF No. 49.  The *Norris* defendants' response deadline has been stayed due to a pending remand motion.  *Norris*, ECF Nos. 22, 37.

[2] FTX entered bankruptcy proceedings in November 2022.  *See In re FTX Trading LTD.*, No. 22-11068 (JTD) (Bankr. D. Del. Nov. 11, 2022), ECF No. 1.

other celebrities), by appearing in advertisements or publicity by FTX, are responsible for losses plaintiffs bore by investing in allegedly unregulated securities offered by FTX;[3] (2) the "*Lam Cases*"— in which various plaintiffs allege that FTX-affiliated individuals and FTX's accounting firms schemed to make the FTX exchange seem legitimate and deceive consumers into investing;[4] and (3) the "Financial Firm Cases"—in which various plaintiffs allege that the financial institutions that transacted with FTX facilitated FTX's fraud and failed to adhere to various banking and financial regulations.[5]

The Celebrity Cases and the *Lam* Cases have already been subject to significant coordination through the relevant parties. Both Celebrity Cases have *already* been consolidated with other actions—*Garrison* with two other lawsuits, and *Norris* with five other lawsuits. The *Garrison* and *Norris* defendants are considering additional efforts to promote judicial economy, including seeking to stay *Norris* (which brings identical claims against three of the *Garrison* defendants), in favor of the first-filed *Garrison*. Similarly, the *Lam* Cases have been deemed related in the Northern District of California and may be consolidated in the future. There is also certainly a possibility—if not a likelihood—that at least some of the Financial Firm Cases will be similarly consolidated.

---

[3] These cases are *Garrison* and *Norris*. Petitioners' Schedule of Action ("Schedule"), ECF No. 1-3, includes a third Celebrity Case, *Podalsky v. Bankman-Fried*, No. 22-cv-23983 (S.D. Fla.) (filed Dec. 7, 2022), but this case was consolidated into *Garrison* in December 2022. *See* Order Transferring Case, *Podalsky*, ECF No. 5; Paperless Pretrial Order, *Garrison*, ECF No. 14.

[4] These cases are *Lam v. Bankman-Fried*, No. 3:22-cv-07336 (N.D. Cal.) (filed Nov. 21, 2022); *Pierce v. Bankman-Fried*, No. 2:22-cv-07444 (N.D. Cal.) (filed Nov. 23, 2022); *Hawkins v. Bankman-Fried*, No. 3:22-cv-07620 (N.D. Cal.) (filed Dec. 2, 2022); *Jessup v. Bankman-Fried*, No. 3:22-cv-07666 (N.D. Cal.) (filed Dec. 5, 2022); and *Papadakis v. Bankman-Fried*, No. 3:23-cv-00024 (N.D. Cal.) (filed Jan. 3, 2023).

[5] These cases are *Bhatia v. Silvergate Bank*, No. 3:23-cv-00667 (N.D. Cal.) (filed on Feb. 14, 2023); *Keane v. Silvergate Bank*, No. 3:23-cv-00670 (N.D. Cal.) (filed on Feb. 14, 2023); *Magleby v. Silvergate Bank*, No. 3:23-cv-00669 (N.D. Cal.) (filed on Feb. 14, 2023); *O'Keefe v. Sequoia Cap. Ops., LLC*, No. 1:23-cv-20700 (S.D. Fla.) (filed on Feb. 22, 2023); and *Statistica Capital Ltd. v. Signature Bank*, No. 1:23-cv-00993 (S.D.N.Y.) (filed Feb. 6, 2023).

Given the significant efforts to coordinate these actions where appropriate, an MDL would neither be convenient for the parties (who are differently situated in virtually all respects) nor promote the overall efficiency of the courts.  Notably, of the thirty-nine unique defendants in the various lawsuits, no defendant is named in all three categories of cases.  None of the celebrity defendants are named as a defendant in any of the Financial Firm Cases.  And none of the banking or accounting firms are named in the Celebrity Cases.  Even the FTX insiders named in the Celebrity Cases and the *Lam* Cases are not named in the Financial Cases.  Aside from the parties themselves, the claims and legal theories asserted in each category of cases are also different.  For example, the Celebrity Cases focus on advertisements and allegedly unregistered securities, while the Financial Firm Cases focus on alleged fraudulent concealment of banking information.  The resulting discovery (if any) is therefore likely to be case- and defendant-specific.  Indeed, the only likely common discovery in these cases relates to FTX itself and some of its executives.  But such discovery faces external obstacles caused by FTX's bankruptcy proceedings and pending criminal proceedings against FTX CEO and founder Sam Bankman-Fried.  Consolidation will not alleviate these delays, and even if discovery could be gathered from FTX, the focus of discovery in each case will be defined by the distinct themes of each category of cases (*e.g.*, celebrity advertisements, banking regulations, accounting standards, etc.) and will not be more efficiently accomplished by centralized FTX-related discovery.

The stark differences between the three categories of actions mean that the benefits of centralization and risks of individual adjudication are minimal, while the burdens of centralization are high.  The Panel should accordingly decline transfer and consolidation of these actions.

## II.    BACKGROUND

Petitioners' motion for transfer and consolidation concerns twelve pending cases, eight in the Northern District of California, three in the Southern District of Florida, and one in the

Southern District of New York.[6]  All except for *Norris* are uncertified putative class actions.

      1.     *The Celebrity Cases*:  *Garrison* and *Norris*, both of which were filed by Petitioners'

counsel, assert four identical claims for:  (1) the sale of unregistered securities under the Florida

Securities and Investor Protection Act § 517.07; (2) unfair or deceptive trade practices under the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") §§ 501.201 *et seq.*, (3) civil

conspiracy under Florida common law, and (4) a declaratory judgment under Florida and federal

law that certain interest-bearing cryptocurrency accounts, called Yield Bearing Accounts

("YBAs"), are "securities," that the FTX cryptocurrency exchange "did not work as represented,"

and that the Celebrity Defendants were "paid exorbitant sums of money to peddle FTX to the

nation," Am. Compl. ¶ 280 ("*Garrison* AC"), *Garrison*, ECF No. 16.  *Garrison* is brought on

behalf of putative global, nationwide, and statewide classes of all persons and entities who

purchased or enrolled in YBAs offered by FTX within the applicable limitations period.[7]  *See id.*

¶ 234.  *Garrison* names as defendants (1) all Responding Defendants; (2) additional celebrities

Udonis Haslem, Stephen Curry, Shaquille O'Neal, Shohei Ohtani, Naomi Osaka, and the Golden

State Warriors (collectively, with Responding Defendants, the "Celebrity Defendants"), and (3)

---

[6] At the time of filing, Petitioners noticed three cases in the Southern District of California that have since been dismissed.  Those cases were refiled, albeit with different named plaintiffs, in the Northern District of California and have been noticed as "tag-along" proceedings.  We thus address the refiled potential "tag-along" proceedings herein.  A chart of the common and uncommon features of the various actions is attached hereto as **Exhibit 1** and referenced herein.

[7] Within a week of filing *Garrison*, Petitioners' counsel filed two additional, nearly-identical putative class actions in the Southern District of Florida.  The first, *Kavuri v. Bankman-Fried*, No. 22-cv-23817-DPG (S.D. Fla.), was assigned to the Hon. Darin P. Gayles.  The second, *Podalsky*, was assigned to the Hon. Beth Bloom.  On December 8, 2022—after receiving their judicial assignments—in what amounts to blatant judge-shopping, Petitioners' counsel attempted to voluntarily dismiss the first-filed case, *Garrison* (assigned to the Hon. K. Michael Moore), and the second-filed case, *Kavuri* (assigned to Judge Gayles), and then consolidate those plaintiffs in the third-filed case, *Podalsky* (assigned to Judge Bloom).  *See, e.g.*, *Kavuri*, ECF No. 5; *Podalsky*, ECF No. 4.  Judge Bloom, however, sua sponte transferred *Podalsky* to Judge Moore, who sua sponte consolidated *Podalsky* with the first-filed *Garrison* and ordered that all future pleadings be filed in *Garrison* and that an amended *Garrison* complaint be filed.  *See* Order Transferring Case, *Podalsky*, ECF No. 5; Paperless Pretrial Order, *Garrison*, ECF No. 14.  *Garrison* is now the lead case.

FTX founder Sam Bankman-Fried and FTX executives Caroline Ellison, Sam Trabucco, Gary Wang, Nishad Singh, and Dan Friedberg (collectively, the "FTX Insiders").  *See id.* ¶¶ 31-48. *Norris* alleges the same claims as *Garrison* on behalf of six individual plaintiffs against Celebrity Defendants Brady, Ortiz, and O'Leary only.[8]  *See id.* ¶¶ 33-35, 70-101.

The primary theory of liability in both *Garrison* and *Norris* is that the plaintiffs allegedly bought YBAs from FTX in reliance on the Celebrity Defendants' alleged promotions of the FTX brand.  *See id.* ¶¶ 23-29, 199-232.  The advertisements, plaintiffs claim, caused them to purchase YBAs and therefore led to their losses when FTX collapsed.  *See id.* ¶¶ 23-29, 199-232.  Both cases seek to hold the respective Celebrity Defendants (and the FTX Insiders in *Garrison*) responsible for their losses.  The focus of discovery, if any, will be the plaintiffs' reliance, or lack thereof, on each Celebrity Defendant's statements and the Celebrity Defendants' respective acts. *Garrison* and *Norris* are pending before Judge Moore in the Southern District of Florida.

2.      *The* Lam *Cases*:  The *Lam* Cases are five putative class actions that have been deemed related in the Northern District of California.  *See* Exhibit 1.  The plaintiffs in these cases moved for consolidation of all five cases for all purposes under *Lam v. Bankman Fried,* the first-filed of these California Actions.  *Lam*, ECF No. 19.  While the Court recently denied the motion to consolidate, *see Lam*, ECF No. 28, the Court expressly noted that it was denying the motion because it was "premature," as many of the defendants in the various actions have yet to be served.

---

[8] Similar to *Garrison*, Petitioners' counsel filed six nearly identical individual actions in Florida state court.  Plaintiff Michael Norris filed the sixth and last of these cases.  The first five state court actions were assigned to the Hon. Alan S. Fine.  After *Norris* was assigned to the Hon. Michael Hanzman, Petitioners' counsel promptly dismissed the other five actions.  Each of the state court plaintiffs joined Norris to file the operative Amended Complaint.  *See* Am. Compl. ("*Norris* AC") ¶¶ 27-32, *Norris*, ECF No. 1-2.  The *Norris* defendants timely removed *Norris* to the Southern District of Florida.  *See* Notice of Removal, *Norris*, ECF No. 1.  The removed case was first assigned to Chief Judge Cecilia Altonaga, but was transferred to Judge Moore, the presiding judge in *Garrison*.  *See* Order, *Norris*, ECF No. 33.  Plaintiffs moved to remand, *see* Mot. Remand, *Norris*, ECF No. 22, which Defendants vigorously opposed, *see Norris*, ECF No. 37.  The motion is pending.

5

Accordingly, these cases may be consolidated in the future.

The *Lam* Cases are fundamentally different from the Celebrity Cases, involving primarily different parties and/or different claims and theories of liability. *Lam* is the most similar, but still quite different. It brings claims against just two of the six FTX Insiders (Bankman-Fried and Ellison) and just one of the twelve Celebrity Defendants (the Golden State Warriors), and does not assert any claims under Florida law. *Lam* asserts claims under California law for unfair competition, false advertising, fraudulent concealment, and civil conspiracy. The case also raises a declaratory judgment claim under California and federal law seeking a declaration that YBAs were unregistered securities, that FTX did not work as represented, and that defendants were paid to misrepresent FTX and YBAs to the nation at large. Am. Compl. ¶¶ 14-16, 59-60 ("*Lam* AC"), *Lam*, ECF No. 1. Lam sues on behalf of a putative transnational class of all persons or entities who purchased YBAs offered by FTX during the applicable limitations period. *Id.* ¶ 59.

While *Lam* shares a modest overlap with the Celebrity Cases, the cases consolidated with *Lam* are very different. *Pierce*, *Hawkins*, and *Papadakis* (all uncertified putative class actions) assert claims against four or five FTX Insiders (Bankman-Fried, Ellison, Wang, and Singh are named in all, with Trabucco named only in *Pierce*) and accounting firms Prager Metis CPAs, LLC ("Prager Metis") and Armanino LLP ("Armanino"). No Celebrity Defendant is named in any of these cases. The claims are also unique. *Pierce* asserts claims under RICO based on an alleged scheme to make the FTX exchange seem legitimate and thus deceive consumers into investing. *See* Compl. ¶¶ 1-9, 114-34, *Pierce*, ECF No. 1. *Hawkins* asserts the same causes of action as *Lam* but alleges different facts: Hawkins alleges that the FTX Insiders, along with their accounting firms, engaged in fraud to persuade the public to invest in FTX and mask the company's shaky financials. Compl. ¶¶ 28-37, *Hawkins*, ECF No. 1. Finally, *Papadakis* asserts fourteen claims

under California law for: (1) unfair competition; (2) false advertising; (3) fraudulent concealment; (4) negligent misrepresentation; (5) intentional misrepresentation; (6) fraud; (7) breach of fiduciary duty; (8) aiding and abetting fraud; (9) aiding and abetting breaches of fiduciary duty; (10) aiding and abetting violations of the unfair competition law; (11) civil conspiracy; (12) conversion; (13) unjust enrichment; and (14) declaratory judgment.  *See* Compl. ¶¶ 110-226, *Papadakis*, ECF No. 13.  The primary theory of liability in *Papadakis* is that the FTX Insiders allegedly defrauded customers, and the accounting firms supposedly concealed that purported fraud through fraudulent audits which gave this scheme an air of legitimacy.  *Id.* ¶¶ 36-43. Discovery in these cases is likely to center on FTX and the accounting firms.

The final *Lam* Case is *Jessup*, which names five FTX Insiders as defendants (Bankman-Fried, Ellison, Wang, Singh, and Trabucco).  Compl. ¶¶ 10-15, *Jessup*, ECF No. 1.  Like *Pierce*, *Hawkins*, and *Papadakis*, no Celebrity Defendant is named in *Jessup*.  The claims are also different from those in the Celebrity Cases.  On behalf of a putative nationwide class including all persons who "had bitcoins, other cryptocurrency, assets or money stored with FTX on" the day before it collapsed, *Jessup* asserts claims for fraud, unjust enrichment, and conversion under California law on the basis that the FTX Insiders engaged in fraud and deceptive conduct to steal billions of dollars from FTX customers.  *Id.* ¶¶ 1-9, 59, 66-92.

3. *The Financial Firm Cases:*  The last group of cases consists of five actions—three in the Northern District of California (*Magleby*, *Keane*, and *Bhatia*), one in the Southern District of Florida (*O'Keefe*), and one in the Southern District of New York (*Statistica*)—all of which have been identified as tag-along actions.  *See* Exhibit 1.  These cases are vastly different from the Celebrity Cases and *Lam* Cases.  Mostly notably, neither the FTX Insiders nor the Celebrity Defendants are named in any of these five actions, and the asserted legal theories are entirely

different.  These cases bring claims against financial and professional services organizations for their alleged roles in the FTX collapse.

*Magleby*, *Keane*, and *Bhatia* assert claims against Silvergate Bank and Silvergate Capital Corporation, and in *Bhatia*, also against the bank's CEO Alan Lane for:  (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; and (3) unjust enrichment.  *See* Exhibit 1. *Keane* also asserts a claim for violations of California's Unfair Competition Law.  Each of these cases asserts claims on behalf of putative worldwide classes of persons or entities who purchased, deposited, and/or transacted funds in accounts on the FTX platform.[9]

*O'Keefe* names *nineteen* defendants, ranging from accounting firms, banks, private equity firms, hedge fund companies, sovereign wealth funds, venture capital firms, multinational conglomerates, and loan companies to law firms.  The defendants include Silvergate Bank, Signature Bank, Prager Metis, and Armanino, as well as fifteen defendants not named in any of the other actions for which Petitioners seek transfer and consolidation:  Deltec Bank and Trust Company Limited, Farmington State Bank, Sequoia Capital Operations, LLC d/b/a Moonstone Bank, Thoma Bravo L.P., Paradigm Operations LP, Temasek Holdings (Private) Limited, Softbank Vision Fund (AIV M2) L.P., Ribbit Capital, L.P., Altimeter Capital Management, LP, Multicoin Capital Management LLC, Tiger Global Management, LLC, Sino Global Capital Limited, Fenwick & West LLP, Softbank Group Corp., and Jean Chalopin.  *See* Exhibit 1.  *O'Keefe* asserts claims under Florida law for:  (1) civil conspiracy; (2) aiding and abetting fraud; (3) aiding and abetting breach of fiduciary duty; and (4) aiding and abetting conversion.  *See id*.  These claims are pled on behalf of putative worldwide classes of persons or entities who purchased, deposited

---

[9] *Magleby*, *Keane*, and *Bhatia* were recently deemed "related" to *Lam*.  *See Lam*, ECF No. 29. Although now related, there are no overlapping plaintiffs or defendants between *Magleby*, *Keane*, and *Bhatia*, on the one hand, and *Lam* on the other hand.

and/or transacted funds in accounts on the FTX platform.

*Statistica* has institutional plaintiffs, and names Signature Bank as the sole defendant. It asserts claims under New York law for aiding and abetting fraud and breach of fiduciary duty, and unjust enrichment—on behalf of a putative worldwide classes of persons who obtained banking services from Signature Bank and were unable to recover their funds. *See* Exhibit 1.

The Financial Firm Cases allege that the financial institutions aided FTX by violating various financial, banking, anti-money-laundering, and know-your-customer ("KYC") regulations. *See, e.g.*, Compl. ¶¶ 32-45, *Bhatia*, ECF No. 1; Compl. ¶¶ 108-176, *Keane*, ECF No. 1; Compl. ¶¶ 14-26, 130-31, *Magleby*, ECF No. 1; Compl. ¶¶ 69-99, *O'Keefe*, ECF No. 1; Compl. ¶ 114-54, *Statistica*, ECF No. 1. None pursues a claim for the sale of unregistered securities, nor does any name a Celebrity Defendant or any FTX Insider. *See* Exhibit 1.

## ARGUMENT

## III. THESE ACTIONS DO NOT MEET THE STANDARDS FOR TRANSFER AND CONSOLIDATION

Transfer and consolidation of actions under 28 U.S.C. § 1407(a) is an extraordinary measure that "should be the last solution after considered review of all other options." *In re Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (quoting *In re Best Buy Co., Inc., Cal. Song–Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). Even after all other options have been considered, centralization is still only appropriate when (i) the actions involve "one or more common questions of fact" that "predominate" over "individual facts"; (ii) transfer would "be for the convenience of parties and witnesses"; and (iii) transfer would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see In re Abbott Labs.*, 763 F. Supp. 2d 1376, 1376 (J.P.M.L. 2011). In other words, transfer and consolidation must be necessary to avoid duplication of discovery, prevent

inconsistent pretrial rulings, reduce litigation costs, and conserve the time and effort of the parties, their counsel and the judiciary. *Manual for Complex Litigation* § 20.131, at 220 (4th ed. 2004). It is Petitioners' burden to "establish[] that centralization would be the most efficient path forward for this litigation." *In re Belviq (Lorcaserin HCI) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021); *see In re Allen Compound Bow Patent Litig.*, 446 F. Supp. 248, 250 (J.P.M.L. 1978) (denying transfer where "movants have not met their burden of demonstrating that transfer will further the purposes of Section 1407"). Petitioners have failed to carry their burden as to each of the Section 1407 factors.

### A.    The Actions Present Unique Questions of Fact and Law

The Celebrity Cases, the *Lam* Cases, and the Financial Firm Cases do not present the type of common questions of fact or law required for transfer and consolidation into an MDL. Although Petitioners contend that "[t]he basic facts alleged in the Related Actions are virtually the same" because the actions all connect in some way to "FTX's business practices," make allegations about FTX and its collapse, and raise (in Petitioners' view) facially similar claims, Br. 9-10; *see* Mot. 3-4,[10] a review of the twelve pending litigations easily dismantles Petitioners' assertions. Each category of cases—the Celebrity Cases, the *Lam* Cases, and the Financial Firm Cases—presents unique factual and legal theories that are uncommon to the other categories of cases.

---

[10] The authorities Petitioners rely on to contend that "overlapping factual issues" alone render a set of actions appropriate for consolidation, Br. 9, are unpersuasive. The Panel in *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 1258399 (J.P.M.L. Apr. 2, 2021), centralized "actions involving multiple, competing defendants," despite the defendant-specific facts involved, because the cases alleged "an industry-wide collusion or conspiracy," which thus predominated over individualized factual issues. *Id.* at *3. Likewise, in *In re Optimal Strategic U.S. Equity Fund Securities Litig.*, 648 F. Supp. 2d 1388, 1388-89 (J.P.M.L. 2009), the actions to be centralized brought claims against a "[c]ommon defendant" and raised substantially the same claims regarding that defendant's conduct. Here, in contrast, the actions Petitioners seek to consolidate turn on defendant-specific questions of liability and causation (some governed by different state laws) that predominate. *See infra* at 11-15. None of the cases brings claims against FTX itself as a centralizing defendant. Rather, each alleges that certain individuals or entities—none of whom is named in all three cases—are liable for actions taken in connection with FTX.

Section 1407 does not merely inquire whether some common factual nexus *exists*.  Rather, for centralization to be appropriate, the "alleged common fact questions" must "predominate" over "individual facts."  *In re Abbott Labs.*, 763 F. Supp. 2d at 1376; *see also, e.g.*, *In re Shoulder Pain Pump-Chondrolysis Prod. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying transfer in part because of "the multiple individualized issues (including ones of liability and causation) that these actions appear to present"); *In re Asbestos & Asbestos Insulation Material Prod. Liab. Litig.*, 431 F. Supp. 906, 906-10 (J.P.M.L. 1977) (denying motion to transfer and consolidate 103 actions where liability would turn on various state laws and each case presented individual questions of causation, liability, and damages).  Here, individualized questions predominate, warranting denial.

The Celebrity Cases, the *Lam* Cases, and the Financial Firm Cases collectively name nearly forty different defendants.  No defendant appears in all cases, or even in all three *categories* of cases.  Eleven of the twelve Celebrity Defendants are named *only* in the Celebrity Cases, with the twelfth appearing in only a single additional case, *Lam*.  Neither of the accounting firms named in the *Lam* Cases are named in the Celebrity Cases.  The financial institutions named in the Financial Firm Cases are not named in the Celebrity Cases or the *Lam* Cases, and the two accounting firms in the *Lam* Cases are named in only one Financial Firm Case—under different legal theories.  Even the FTX Insiders are named only in the *Lam* Cases and one Celebrity Case—but not the Financial Firm Cases.  Combining the fifteen unique *O'Keefe* institutional defendants with the eleven unique Celebrity Defendants will hardly streamline litigation or facilitate efficient resolution.  Nor will bringing accounting firms into the Celebrity Cases or Celebrity Defendants into the accounting cases.  Based on the defendants alone, "commonality" among these cases is essentially non-existent.  *See In re Shoulder Pain Pump*, 571 F. Supp. 2d at 1368 (denying centralization in part

due to lack of commonality where "many defendants are sued only in a minority of those actions"); Exhibit 1.

The claims and factual allegations—and thus the required proof for these claims—are also unique to each category of cases.  The primary theory of liability in the Celebrity Cases is that the Celebrity Defendants, by allegedly promoting the FTX exchange, are responsible for losses plaintiffs bore from their purchases of unregistered YBAs.  *See, e.g.*, *Garrison* AC ¶¶ 23-29; *Norris* AC ¶¶ 27-32.  The focus in these cases will be the viability of plaintiffs' legal theories, plaintiffs' alleged reliance on celebrity advertisements for their investment decisions, whether the YBAs were required to be registered, and the Celebrity Defendants' involvement, or lack thereof, with FTX.  By contrast, the primary theory of liability in the *Lam* Cases relates to the FTX Insiders, their relationship with their accounting firms, and allegations that both the FTX Insiders and their accounting firms schemed to make the FTX exchange seem legitimate and deceive consumers into investing.  *See, e.g.*, *Pierce* Compl. ¶¶ 98-112; Exhibit 1.  Proof of these allegations and the elements of unique claims such as RICO violations, fraud, breach of fiduciary duty, conversion, and unjust enrichment against the accounting firms necessarily implicates defendant- and fact-specific discovery, which bears no relation to the Celebrity Cases.

Even further afield, the primary theory of liability in the Financial Firm Cases is that the financial institutions that transacted with FTX facilitated FTX's fraud and failed to adhere to various banking and financial regulations.  *See supra* Part II.  These cases involve a cornucopia of investment firms and professional services organizations and center on whether they violated a host of banking and financial regulations, such as the Bank Secrecy Act, the U.S. Patriot Act, anti-money-laundering laws, and KYC regulations.  *See, e.g.*, Compl. ¶¶ 32-45, *Bhatia*, ECF No. 1; Compl. ¶¶ 108-176, *Keane*, ECF No. 1; Compl. ¶¶ 14-26, 130-31, *Magleby*, ECF No. 1; Compl.

¶¶ 69-99, *O'Keefe*, ECF No. 1.  Such allegations have no relation to the Celebrity or *Lam* Cases.

This Panel has repeatedly denied transfer and consolidation of actions that share some common factual nexus but otherwise turn on case-specific facts related to defendants who are not named in all actions.  *See, e.g.*, *In re Watson Fentanyl*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (rejecting request for industry-wide centralization where cases "involve[d] unique product- and defendant-specific issues"); *In re Genetic Techs. Ltd. (%2C179) Pat. Litig.*, 883 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012) (denying centralization in part because "certain defendants have idiosyncratic potentially dispositive defenses that will implicate significant unique facts").  That certainly applies here, where there is no commonality in defendants and no commonality in the legal theories asserted across the twelve cases.  This flaw in Petitioners' transfer and consolidation theory is relevant at all stages of the litigations.  Even at the Rule 12 stage, the cases will involve different legal theories and different potentially dispositive defenses that will have no bearing on the other cases.  The distinct factual and legal differences that result from these dissimilarities overwhelm the minimally similar issues related to FTX.

In the few areas where there is overlap among the cases proposed for consolidation, such issues do not "predominate" over the individualized questions of fact.  While plaintiffs in the Celebrity Cases, *Lam*, and *O'Keefe* make generic allegations that they bought YBAs or otherwise invested in FTX in reliance on statements by various individuals or entities, *see Garrison* AC ¶¶ 23-29; *Norris* AC ¶¶ 27-32; *Lam* Compl. ¶ 13; *O'Keefe* Compl. ¶ 11, each case is brought by a different set of plaintiffs against mostly different defendants.  Each plaintiff must prove reliance on *individual defendants*' statements (as well as the soundness of their disparate legal theories) to prevail on their claims.[11] But, because these claims are fact-specific, there is unlikely to be any

---

[11] *See, e.g.*, Fla. Stat. § 501.211(2) (plaintiff must have "suffered a loss as a result of a violation" to prevail on a Florida deceptive trade practices claim.); *UTC Indus., Inc. v. Presidential Fin.*

common discovery among these cases.   Only one Celebrity defendant—the Golden State Warriors—is named in both *Garrison* and *Lam*,[12] and there are no common defendants among all three of *Garrison*, *Lam*, and *O'Keefe*.   Each Celebrity Defendant also presumably had an individual contract with FTX or its affiliates; accordingly, to the extent these cases were to proceed to discovery, discovery will vary from Celebrity Defendant to Celebrity Defendant and from case to case.   Further, the cases would turn also on the individual facts associated with specific plaintiffs' purchases.   By contrast, the defendants' liability in *O'Keefe* turns on whether the plaintiffs can attribute the harm they suffered to a host of actions by financial and professional service entities—none of whom is referenced in the Celebrity Defendant Cases.   *Compare O'Keefe* Compl. ¶¶ 68-179, *with Garrison* AC; *Norris* AC.   There is thus likely to be little if any overlap in the required factual proof related to the various defendants in these various cases.

Still other distinctions bear mention.   The similarly-titled claims in *Lam* and *Garrison*— for example, the civil conspiracy claims—are in fact different:   Florida and California law are not identical, the alleged conspirators are different, and thus these cases will require different proof and may result in different outcomes based on differences in the facts and in the law of each state. *See*, *e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18 (S.D.N.Y. July

---

*Corp.*, 976 So. 2d 92, 94 (Fla. 3d DCA 2008) (to plead civil conspiracy, plaintiff must allege to have suffered harm "as a result of acts done under the conspiracy"); *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *5 (M.D. Fla. Sept. 20, 2005) (to allege a claim under Florida law for the sale of unregistered securities, plaintiffs must allege that they "purchased securities as a result of [a] solicitation"); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018) (plaintiffs pursuing claims under California's consumer protection laws must show that a misrepresentation or omission was an "immediate cause of the injury-causing conduct"); *GEC US 1 LLC v. Frontier Renewables, LLC*, 2017 WL 605070, at *10 (N.D. Cal. Feb. 15, 2017) (civil conspiracy claim under California law requires "damage resulting to [the] plaintiff . . . from an act done in furtherance of the common design").

[12] Even this overlap is misleading.   Responding Defendants understand that the Golden State Warriors intend to move to dismiss the claims against it in *Garrison* on personal jurisdiction grounds.   If that motion succeeds, there will be no overlapping Celebrity Defendants in the Celebrity Cases and the *Lam* Cases.

15, 2016) ("[T]he Court will separately address each claim with respect to each jurisdiction, as subtle differences in state law can dictate different results for plaintiffs in different jurisdictions."). Similarly, the declaratory judgment claims in the Celebrity Cases and *Lam* seek declarations that FTX paid each individual defendant "large sums of money to promote the exchange," *Lam* Compl. ¶ 114; *Garrison* AC ¶ 280; *Norris* AC ¶ 101, requiring defendant-specific factual assessments for these claims. Moreover, the isolated commonalities do not "predominate" over the many individualized factual issues on which the rest of the plaintiffs' claims turn. *See In re Belviq*, 555 F. Supp. 3d at 1370 (declining to consolidate cases when "[t]he record before us indicates that individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL").

In sum, individualized factual issues easily predominate the small number of common legal issues (*none* of which is common to all three categories of cases). Each category of cases will require rulings on a variety of case-specific and non-overlapping questions of law and fact that do not support centralization. *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying MDL transfer because "individual issues of causation and liability" predominated and would "overwhelm any efficiencies that might be gained by centralization"). Petitioners have not carried their burden as to the first Section 1407 factor.

### B.    Transfer Would Not Serve the Convenience of the Parties

Transfer and consolidation would not serve the convenience of the nearly 70 parties or the many anticipated witnesses related to the various actions. Petitioners raise only one argument about this second factor, arguing that "[d]iscovery in all of these actions will involve the substantially similar testimony and documentary evidence from the Defendants." Br. 10. But as detailed above, this is untrue. **Twenty-five** defendants are named in only a single case, **thirty-one** defendants are named in only one of the three case categories, and **none** of the nearly 70 parties

15

overlap amongst all three categories.

While there is certainly likely to be some overlap in discovery in the two S.D. Fla. Celebrity Cases pending before Judge Moore (if *Norris* is not stayed in favor of the identical first-filed *Garrison*) or in the *Lam* Cases or the Financial Firm Cases, there is no significant overlap in discovery across all the cases—or even a substantial portion of them.[13]  Centralization would thus not alleviate any party's need to produce different discovery to different plaintiffs on different legal theories.  Indeed, one need only consider whether it would be "convenient" for the parties to conduct a deposition of an executive at FTX as to the involvement of 20+ investment firms and professional services organizations, such as Temasek (a Singaporean sovereign wealth fund) or Softbank (a Japanese multinational conglomerate)—and in that same deposition, also probe for facts relating to individual agreements with twelve different celebrities related to advertising or endorsements.  Centralization simply does not serve any convenience factor for any party here. *See, e.g.*, *In re Fam. Dollar Stores, Inc., Access for Individuals with Disabilities Litig.*, 466 F. Supp. 3d 1383, 1384 (J.P.M.L. 2020) (declining centralization of cases that required a "significant amount" of "case-specific discovery").  Indeed, it would likely impose onerous, unnecessary burdens on parties with little commonality across the various cases.

The mere fact that all the cases involve *some* common facts—namely, evidence about the FTX exchange, its operations, and alleged malfeasance by the FTX Insiders—is not sufficient basis for centralization.  FTX itself is not a party to any of the actions; rather, it is in the midst of

---

[13] As discussed above, only one of the twelve Celebrity Defendants (the Golden State Warriors) is named in an additional case, *Lam*.  Even there, *Lam* and *Garrison* assert different legal theories under different state laws.  Consolidation certainly does not serve the convenience of the 27 plaintiffs and 39 defendants who do not overlap.  Similarly, the accounting firms named in the *Lam* Cases are not parties to any Celebrity Case, and they are named in only one of the Financial Firm Cases, but under vastly different legal theories.  And the FTX Insiders—who are not named in the Financial Firm Cases—will necessarily have to produce different discovery to different parties on different legal theories in the Celebrity and *Lam* Cases, should those cases proceed.

bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware. *See In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.). The automatic stay applicable to a debtor while its bankruptcy is pending, *see* 11 U.S.C. § 362(a), may foreclose even the possibility of third-party discovery from FTX until its bankruptcy proceedings conclude.[14] In addition, the U.S. Attorney's Office for the Southern District of New York, which is prosecuting a criminal action against FTX founder Sam Bankman-Fried, *see United States v. Bankman-Fried*, No. 22-cr-673 (S.D.N.Y.), has expressed concerns about discovery from the FTX Defendants and may seek to stay such discovery—as it has in other pending litigations already.[15] Furthermore, Silvergate Capital—a defendant in three of the five Financial Firm Cases and the holding company for Silvergate Bank (named in four Financial Firm Cases)—recently announced its intent to liquidate and wind down its operations. This could potentially create obstacles to discovery in Financial Firm Cases as well. The external obstacles to obtaining FTX-related discovery, as well as potential obstacles to Silvergate-related discovery, mean that consolidation into an MDL will not entail convenience or efficiency of any common discovery—to the extent any even exists.

### C.    Transfer Would Not Promote the Just and Efficient Conduct of the Actions

Section 1407 makes clear that centralization should be the last resort only after "considered

---

[14] *See, e.g.*, *In re Phila. Newspapers, LLC*, 423 B.R. 98, 105 (E.D. Pa. 2010) (extending automatic stay to preclude non-party discovery where "the 'information' sought is to be used in the prosecution of an action in which the employee of the Debtors is a defendant, which if found liable, the Debtors could have an obligation to indemnify"); *In re Manown*, 213 B.R. 411, 412 (N.D. Ga. 1997) ("Discovery is considered part of the 'continuation' of a proceeding and is therefore subject to the automatic stay.").

[15] Defs.' Mot. Coordinated Briefing Schedule 3 n.2, *Garrison*, ECF No. 48 ("[T]he United States Attorney has concerns with certain party and/or third-party discovery that involves or implicates FTX defendants or witnesses proceeding in . . . currently pending actions[.]  Specifically, the United States Attorney expressed concern that discovery in these actions could significantly interfere with the prosecution of [Bankman-Fried]."). Indeed, the U.S. Attorney has already sought and received court-ordered stays in other litigations related to FTX defendants. *See* Mot. to Stay, Order, *SEC v. Bankman-Fried*, No. 1:22-cv-10503-PKC (S.D.N.Y.) (ECF Nos. 33, 38); Mot. to Stay, Order, *CFTC v. Bankman-Fried*, 1:22-cv-10501-PKC (S.D.N.Y.) (ECF Nos. 12, 16).

review of all other options." *In re Gerber*, 899 F. Supp. 2d at 1379 (quoting *In re Best Buy*, 804 F. Supp. 2d at 1378).  While Petitioners argue that centralization will further Section 1407's goals of serving justice and efficiency, that is false, as shown above.

Petitioners contend that, because "multiple class actions have been initiated against multiple defendants who are engaged in substantially similar conduct," centralization "serves the convenience of parties and witnesses."  Br. 10.  As shown above, that premise is incorrect, as the distinct categories of cases and unique legal theories asserted in those categories undermines Petitioners' argument of commonality.  *See supra* Part III.A.  In any event, insofar as there is any similarity between the proposed classes in *Garrison* and *Lam,* that potential similarity is mooted because the plaintiffs in each case assert mostly state-law claims—and those plaintiffs cannot assert state-law claims on behalf of putative class members who bought YBAs outside Florida or California, respectively.  *See, e.g.*, *Garrison* AC ¶ 234; *Lam* Compl. ¶ 59; Exhibit 1; *Feldman v. BRP U.S., Inc.*, 2018 WL 8300534, at *6-7 (S.D. Fla. Mar. 28, 2018) (rejecting putative class claims brought under Florida law "on behalf of class members who purchased [the disputed product] outside of Florida"); *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (denying certification of a nationwide class raising consumer protection claims because "the consumer-protection laws of the potential class members' home States will govern their claims"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (reversing nationwide class certification in contract and consumer fraud because each plaintiff's claim would be governed by the law of his own state and so "a single nationwide class is not manageable").  Accordingly, centralization is not appropriate based on supposed class overlap.  *See, e.g.*, *In re Lycoming Crankshaft Prod. Liab. Litig.*, 473 F. Supp. 2d 1380, 1381 (J.P.M.L. 2007) (rejecting motion for centralization a to actions pending in two districts as to which "no overlap exists between the

putative classes in the Pennsylvania actions and the California action").[16]

Petitioners next point to the specter of "conflicting pre-trial rulings" because plaintiffs in the various actions "assert many of the same claims." Br. 11. But this too is false. The Celebrity Cases, *Lam* Cases, and Financial Firm Cases all present unique claims with very little, if any, overlap. For example, affirmative claims of fraud, misrepresentation, RICO violations, conversion, and breach of fiduciary duty are unique to the *Lam* Cases. And, as discussed above, even where the claims appear similar, these claims are brought against different defendants largely under different states' laws.[17] These distinctions means that there is minimal risk of conflicting pretrial rulings on questions of law, further counseling against centralization.

In a last-ditch effort to show that centralization is warranted, Petitioners speculate that more related actions will be "filed in the coming weeks." Br. 11. But the small number of potential tag-along cases actually filed since Petitioners' petition—the Financial Firm Cases—remove all doubt that centralization of these twelve actions would be *in*efficient, as these cases have no overlap with the Celebrity and *Lam* Cases. The limited commonalities among the three categories of cases—*i.e.*, their shared origins in the FTX collapse and certain overlapping elements of distinct state law claims—are not "sufficiently complex to warrant" the last resort of centralization. *In re Air Crash Near Canandaigua, N.Y.*, 427 F. Supp. 2d 1365, 1366 (J.P.M.L. 2006).

Furthermore, there are ample alternatives to centralization that offer the benefit of

---

[16] The cases Petitioners cite (Br. 11) are irrelevant. Two did not involve nationwide classes, *see In re Plumbing Fixture Cases*, 298 F. Supp. 484, 487 (J.P.M.L. 1968); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (referring to "overlapping putative class actions" without describing the classes as nationwide), and the third involved a nationwide class certified for alleged violations of federal law, *see In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) (claims under 17 U.S.C. §§ 2721 *et seq.*).

[17] The *Norris* and *Garrison* plaintiffs raise one declaratory claim that arises under federal law and seeks a declaration that the YBAs sold by FTX were "securities required to be registered with the SEC and state regulatory authorities." *Garrison* AC ¶ 280; *Norris* AC ¶ 101. The *Lam* plaintiffs make a similar request. *Lam* Compl. ¶ 114. The limited risk of conflicting rulings created by these declaratory claims is, however, far outweighed by the many factors that disfavor centralization.

efficiency without imposing the burdens of centralization.   The most obvious of these—consolidation, where appropriate—is already in use.  *See id.* at 1380.  Petitioners' counsel consolidated six state-court actions into *Norris*, while three federal putative class actions were consolidated into *Garrison*, and *Norris* and *Garrison* have been related and placed before the same Judge.  Similarly, plaintiffs in the *Lam* Cases have already sought consolidation in the Northern District of California.  Although their motion was denied as premature, it is likely those plaintiffs will again seek consolidation once all parties are served.   And given the substantial overlap between at least some of the Financial Firm Cases, it is likely that the parties there will also seek consolidation or coordination, for example, with respect to the Silvergate defendants.  These efforts will create substantial efficiencies, and promote judicial economy, without any action by the Panel.  *See, e.g.*, *In re Belviq*, 555 F. Supp. 3d at 1370 (rejecting transfer where alternative methods of coordination existed and were effective).  The parties can also utilize the "first-filed" rule to stay subsequently filed, similar actions, or voluntary dismissal in favor of one district—a remedy that may well resolve the issue of the one overlapping Celebrity Defendant (the Golden State Warriors) in *Garrison* and *Lam*.  *See In re Gerber*, 899 F. Supp. 2d at 1380-81.  Likewise, if any of the parties named in multiple lawsuits are so inclined, they could seek "Section 1404 transfer" to the Southern District of Florida or the Northern District of California.  *Id.* at 1379.  The "last solution" of centralization would frustrate both completed and ongoing efforts to ensure efficient adjudication of these disparate cases, which have already resulted in substantial efficiencies.  *Id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel deny Petitioners' Motion for Transfer of Related Actions.

Dated: March 10, 2023                      Respectfully submitted,


                                           **LATHAM & WATKINS LLP**

                                           By: */s/ Andrew B. Clubok*
                                               Andrew B. Clubok
                                               andrew.clubok@lw.com
                                               D.C. Bar No. 446935
                                               555 Eleventh Street, NW, Suite 1000
                                               Washington, D.C. 20004-1304
                                               Telephone:  202.637.2200
                                               Facsimile:  202.637.2201

                                           Attorney for Defendants Thomas Brady, Gisele
                                           Bündchen, and Lawrence Gene David

                                           **AKERMAN LLP**

                                           By: */s/ Christopher S. Carver*
                                               Christopher S. Carver
                                               christopher.carver@akerman.com
                                               Florida Bar No. 993580
                                               201 East Las Olas Boulevard – Suite 1800
                                               Ft. Lauderdale, FL 33301
                                               Tel.: 954-463-2700
                                               Fax: 954-468-2454

                                           Attorney for Defendants David Ortiz

                                           **MARCUS NEIMAN RASHBAUM
                                           & PINEIRO LLP**

                                           By: */s/ Jeffrey A. Neiman*
                                               Jeffrey A. Neiman
                                               jneiman@mnrlawfirm.com
                                               Fla Bar. No. 544469
                                               100 Southeast Third Avenue, Suite 805
                                               Fort Lauderdale, Florida 33394
                                               Tel: (954) 462-1200
                                               Fax: (954)-688-2492

                                           Attorney for Defendant Kevin O'Leary

                                           **DIMOND KAPLAN & ROTHSTEIN, P.A.**

                                           By: */s David A. Rothstein*
                                               David A. Rothstein, Esq.
                                               Fla. Bar No. 995762
                                               DRothstein@dkrpa.com
                                               Offices at Grand Bay Plaza

21

2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920
Facsimile:  (305) 374-1961

Attorney for Defendant William Trevor
Lawrence